397 A.2d 1331.

ESTATE OF WILLIAM H. CHEETHAM *vs.* MARIE A. CHEETHAM.

FEBRUARY 26, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.    These are consolidated appeals in two cases arising out of a domestic dispute. The first case is before us on appeal from a judgment of dismissal without prejudice of an action brought by William H. Cheetham (plaintiff) by reason of failure to join or secure ratification of the plaintiff's conservator. The second case involves an appeal from a decree of the Probate Court of the City of Pawtucket to the Superior Court where the plaintiff, as appellant, sought summary judgment declaring the prior conservatorship proceedings to be null and void. That case is before us on the plaintiff's appeal from an order denying his motion for summary judgment. The order was clearly interlocutory, but in the light of our disposition, we need not address this appeal on its merits. For purposes of this opinion, we shall treat these two cases as one controversy. A recitation of the facts as set forth in the case records and by the parties in their briefs may be of assistance in understanding the procedural morass in which the litigants have become engulfed.

A complaint was filed by plaintiff against his wife on March 2, 1971. The parties have since been divorced. The plaintiff claims that he was the sole owner of a funeral business and was assisted by his wife in its operation. The business is located on real estate jointly owned by plaintiff and defendant.

During the period 1965 to 1967, plaintiff became ill. The exact nature of his illness and its effect upon his competency is disputed. The plaintiff alleges that on June 30, 1967, defendant by duress and undue influence obtained from him a power of attorney which permitted her to take over and control his funeral home business. He alleges that she is still holding this property and refused both to return control of it to him and to return the power of attorney. He asserts in his

complaint that defendant former wife has excluded him from the funeral home and that she refuses to account for the financial condition of the business. He seeks such an accounting.

Additionally, plaintiff accuses defendant and her attorney of conspiring to have him deprived of his freedom during the period from 1965 to 1968. He claims that he was confined against his will in the State Institute of Mental Health, Chapin Hospital and other institutions by virtue of the actions of his wife. For this confinement he seeks money damages from defendant.

The defendant denies all of plaintiff's allegations and has filed a counterclaim seeking partition of the marital domicile which also houses the funeral home business which she has been operating since plaintiff became ill.

The case was originally reached for trial in the Superior Court on February 1, 1972. The trial justice appointed a special master to audit the records of the funeral home business over plaintiff's objection. On appeal we held that the appointment of a master was premature and inappropriate prior to the resolution of certain legal issues, and we remanded the case for determination of such legal issues before any accounting should take place. *Cheetham v. Cheetham*, 114 R.I. 466, 335 A.2d 327 (1975).

Upon remand the case was presented to a different trial justice whose determination is presently in issue. He heard this matter beginning July 8, 1975, without the intervention of a jury. During the course of these hearings, the trial justice became aware that plaintiff had been under conservatorship since June 26, 1968 by virtue of a decree of the Probate Court of the City of Pawtucket. The plaintiff suggests that the conservator, Mr. Clifford Weldon, was appointed as a result of a petition signed by plaintiff and filed in the probate court by plaintiff's former attorney. The plaintiff further suggested at oral argument that the conservator was also a patient in the State Institute of Mental Health at the time of his appointment and that he has not carried out any function as conser-

vator since the time of his selection.[1] The plaintiff asserts that he has been unable to discover the whereabouts of this erstwhile conservator.

The trial justice in the Superior Court, upon discovering the existence of the conservatorship, interrupted the trial in order to permit the parties to take steps in the probate court to seek ratification by the then-existing conservator or a successor conservator of the filing and prosecution of the pending complaint.

In the probate court plaintiff attempted to terminate the conservatorship by filing a final account in his own name. Meanwhile, a claim had been filed by plaintiff's former attorney against the conservatorship estate in the sum of $6,800. The probate judge of the city of Pawtucket entered a decree dated August 29, 1975, which reads as follows:

> "It appearing that petitioner has no need of such Conservator, it is ORDERED and DECREED that he be discharged therefrom and the said Conservator is discharged but with petitioner's rights as prayed, if any being preserved, further the Court makes specific reference to the judgment and order in William Cheetham vs Clifford Weldon, Conservator of Estate of William H. Cheetham. Subject to an accounting being filed, Mr. Cheetham waiving such accounting."

Upon resumption of the trial in the Superior Court, the clerk of the Probate Court of the City of Pawtucket indicated that the conservatorship had not been terminated because the court had never approved the final account for several reasons, including the fact that it had been filed by the ward and not by the conservator, and the additional fact that an outstanding claim had neither been disallowed nor compromised. This testimony was buttressed by a letter from the probate judge to a similar effect.

---

[1]No explanation is offered by the parties for this bizarre occurrence. Indeed, the parties did not even inform the trial justice of the existence of the conservatorship.

Upon learning of these circumstances, the trial justice in the Superior Court dismissed the complaint without prejudice on the ground that a ward could not bring and maintain an action in his own name, without the approval and joinder of his guardian or conservator. For this proposition the trial justice appropriately cited *Cochrane* v. *Trayner*, 93 R.I. 42, 171 A.2d 80 (1961); *Whitmarsh* v. *McGair*, 90 R.I. 154, 156 A.2d 83 (1959), and *Taylor* v. *Superior Court*, 30 R.I. 200, 74 A. 482 (1909). The plaintiff is before us on appeal from this judgment.

Records of the probate proceedings show that the Probate Court of the City of Pawtucket on October 6, 1976 removed Clifford Weldon as conservator and appointed plaintiff's son, William H. Cheetham, Jr., and Catherine Darcy, plaintiff's sister, as coconservators. From this decree plaintiff appealed to the Superior Court. Since Catherine Darcy failed to file her bond in accordance with the law, she was subsequently removed as coconservator. Francis A. Maguire, Esquire, plaintiff's attorney, was appointed as successor coconservator. The plaintiff contends that his son is not willing to support his claim against defendant, and that he is not in need of a conservator in any event. He challenges the probate proceedings as void *ab initio*, because of a number of alleged procedural irregularities.

Therefore, it appears that plaintiff could never proceed with his action in the Superior Court against his former wife without either concluding or obtaining suitable relief in the probate proceeding, and that this latter proceeding has become as complex and as difficult as the main action against his wife.[2] Indeed, this procedural thicket is not unlike the fifth and sixth arguments of the philosopher, Zeno of Elea. In the Fifth Century, B.C., this philosopher, who is regarded as the inventor of dialectic, asserted that it was impossible for a

---

[2] Since the conservatorship cannot be concluded until a final account has been filed, and since there are no assets to pay or compromise the pending claim, no likelihood of termination of this proceeding can be perceived in the foreseeable future.

body to go from one point to another because there are an infinite number of points on a line and, therefore, an infinite number of divisions to be passed before the distance could be traversed. This paradox is later solved by the recognized solution that one may pass through an infinite series. We believe that we are at the point in this litigation at which it becomes necessary to pass through this infinite series in order to achieve a finite result.

This court under its supervisory and revisory powers has the authority to fashion remedies. *Hyde* v. *Superior Court*, 28 R.I. 204, 66 A. 292 (1907); G.L. 1956 (1969 Reenactment) §§8-1-2, 8-6-1. *See also State* v. *DeLomba*, 117 R.I. 673, 676-77, 370 A.2d 1273, 1275 (1977); *State* v. *Fortes*, 114 R.I. 161, 172-73, 330 A.2d 404, 411 (1975). If ever there was a case in which a remedy should be fashioned, this is such a controversy. Pursuant to this authority, and in the exercise of this power, we hereby remand this case to the Superior Court with the following recommended guidelines:

(1) The trial justice who heard the civil action in 1975 and 1976 should first consider the appeal from the Probate Court of the City of Pawtucket. He should determine whether plaintiff is presently in need of a conservator, or whether he is competent to handle his own affairs. If he finds that plaintiff is competent to handle his own affairs, the trial justice should permit plaintiff to resume the litigation of his claims against defendant former wife, without inhibition from the existence of the conservatorship. The conservatorship may be held open, however, for the purpose of proceedings relating to the final account and the handling of any claims against the conservatorship estate which may be outstanding. The lack of a successful filing of a final account, however, should not prevent plaintiff, if competent, from conducting this litigation in his own name. In the event that the trial justice finds plaintiff to be incompetent and therefore to require the services of a conservator, he should appoint such conservator as in his judgment will best serve the interests of plaintiff. In the light of the serious allegations which have been made by

plaintiff, such conservator should be instructed to pursue plaintiff's claims against defendant former wife by ratifying the legal actions formerly pursued or by relitigating such claims as the conservator shall consider necessary.

(2) Upon determining the status of the conservatorship, the trial justice should resume consideration of the claims of plaintiff against defendant. In resuming this determination, the trial justice may, in his discretion, and with due regard to whether a conservator joins in the proceedings, rely upon evidence already adduced or may take such additional evidence as justice and the circumstances will require.

In our opinion, a reliable determination of these claims must be made upon the merits. Procedures to this end should take place with all deliberate speed. In light of the foregoing determination, it is unnecessary to consider claims raised by the plaintiff concerning the validity of the initial decrees of the probate court upon the plaintiff's own petition.

The plaintiff's appeal is sustained in part, and the consolidated cases are remanded to the Superior Court for further proceedings in accordance with this opinion.

*Francis J. Maguire*, for plaintiff.

*John F. Sherlock, Jr.*, for defendant.